MARK R. MCDONALD (CA SBN 137001)
DAN MARMALEFSKY (CA SBN 95477)
MARGARET N. BUCKLES (CA SBN 298696)
MMcDonald@mofo.com
DMarmalefsky@mofo.com
MBuckles@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Nominal Defendant
MONSTER BEVERAGE CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| FRANK FALAT, derivatively on behalf of MONSTER BEVERAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY CYRIL SACKS, HILTON HILLER SCHLOSBERG, GUY P. CARLING, THOMAS J. KELLY, EMELIE C. TIRRE, MARK J. HALL, KATHLEEN E. CIARAMELLO, GARY P. FAYARD, JEANNE P. JACKSON, STEVEN G. PIZULA, BENJAMIN M. POLK, SYDNEY SELATI, MARK S. VIDERGAUZ, and DOES 1-10,<br><br>Defendants,<br><br>-and-<br><br>MONSTER BEVERAGE CORPORATION,<br><br>Nominal Defendant. | Case No.   8:20−cv−01782−JVS (KESx)<br><br>**NOMINAL DEFENDANT MONSTER BEVERAGE CORPORATION'S  NOTICE OF MOTION AND MOTION TO DISMISS THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:   Hon. James V. Selna<br>Date:     February 22, 2021<br>Time:     1:30 p.m.<br>Place:    Courtroom 10C |

**ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 22, 2021, at 1:30 p.m., or at such later date and time as the Court may order, in the Courtroom of the Honorable James V. Selna, Courtroom 10C, United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, California, Nominal Defendant Monster Beverage Corporation ("Monster" or the "Company") will and hereby does move the Court to dismiss this action with prejudice on the grounds that Plaintiff Frank Falat ("Plaintiff") failed to make pre-suit demand on Monster's board of directors and has failed to allege demand futility with sufficient particularity as required by Federal Rule of Civil Procedure 23.1 and Delaware law and, therefore, lacks standing to bring the claims asserted in his Verified Shareholder Derivative Complaint ("Complaint").  *See* Fed. R. Civ. P. 12(b)(6), 23.1, and 41(b).

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 7, 2021, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Request for Incorporation By Reference and Request for Judicial Notice, Declaration of Mark R. McDonald and exhibits thereto, the Complaint, the Court's record in this matter, the arguments of counsel, and any other materials that the Court may consider prior to its decision on this Motion.

Dated:    January 15, 2021

Respectfully submitted,

MORRISON & FOERSTER

By:    */s/ Mark R. McDonald*
Mark R. McDonald

Attorneys for Nominal Defendant
Monster Beverage Corporation

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    LEGAL STANDARD FOR ALLEGING DEMAND FUTILITY ................. 3

III.   BACKGROUND .............................................................................. 5

    A.   Parties ................................................................................ 5

    B.   Monster's Statements About Diversity and Inclusion ......................... 6

    C.   Plaintiff's Complaint ................................................................ 7

IV.    PLAINTIFF'S COMPLAINT FAILS TO SHOW A MAJORITY OF
THE BOARD LACKS DISINTERESTEDNESS OR
INDEPENDENCE .......................................................................... 8

    A.   Sacks and Schlosberg Do Not Lack Disinterestedness or
Independence Merely Because They Are Management ....................... 8

    B.   Plaintiff Fails to Show that Any Director Faces a Substantial
Risk of Personal Liability ........................................................... 9

        1.   No director faces a substantial likelihood of liability for a
conscious failure to oversee operations ................................... 10

            a.   Plaintiff concedes Monster had internal controls .......... 11

            b.   Plaintiff does not plead facts showing a deliberate
failure to monitor ............................................... 12

        2.   Plaintiff fails to show the three Audit Committee
members face a substantial risk of liability ............................. 17

        3.   Plaintiff does not show a substantial likelihood of liability
as to his other state law claims ............................................ 19

        4.   Plaintiff does not show any director faces a substantial
likelihood of liability for issuing a false proxy statement ........ 20

            a.   No director faces any possible conflict of interest
because Plaintiff does not seek damages ..................... 21

            b.   The challenged statements do not contain material
misrepresentations or omissions ............................... 22

            c.   Plaintiff fails to plead that any director acted with a
culpable state of mind .......................................... 22

            d.   Plaintiff fails to show the proxy statements were
"an essential link" to the alleged harm ...................... 24

V.     CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Advisors G. P. v. Berman*,
2014 WL 12772264 (C.D. Cal. Sept. 16, 2014)...................................................25

*In re Am. Apparel, Inc. 2014 Deriv. S'holder Litig.*,
2015 WL 12724070 (C.D. Cal. Apr. 28, 2015)............................................21, 22

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
2012 WL 9506072 (C.D. Cal. July 31, 2012) ..............................................11, 15

*Arduini v. Hart*,
774 F.3d 622 (9th Cir. 2014)........................................................................3, 14

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v.
Eisner*, 746 A.2d 244 (Del. 2000) ...................................................................3, 4

*Ash v. McCall*,
2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ....................................................12

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) (en banc)..............................................................4, 5

*Behrmann v. Brandt*,
2020 WL 4432536 (D. Del. July 31, 2020).......................................................17

*Bhonagiri v. Pandey*,
2020 WL 5893404 (N.D. Cal. Oct. 5, 2020)......................................................18

*In re Bidz.com, Inc. Deriv. Litig.*,
773 F. Supp. 2d 844 (C.D. Cal. 2011)............................................................2, 11

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002)...........................................................................22

*Burbrink v. Campbell*,
734 F. App'x 416 (9th Cir. 2018)........................................................................4

*In re Caremark Int'l Inc. Derivative Litigation*,
  698 A.2d 959 (Del. Ch. 1996) ........................................................ 2, 11

*In re Citigroup Inc. S'holder Deriv. Litig.*,
  964 A.2d 106 (Del. Ch. 2009) ............................................................. 18

*In re CNET Networks, Inc.*,
  483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................. 20

*In re Comput. Scis. Corp. Deriv. Litig.*,
  2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ....................................... 3

*Copeland v. Lane*,
  2013 WL 1899741 (N.D. Cal. May 6, 2013) ....................................... 24

*In re Cray Inc.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006) ..................................... 15, 16

*Daisy Sys. Corp. v. Finegold*,
  1988 WL 166235 (N.D. Cal. Sept. 19, 1988) ....................................... 15

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) ............................................... 21, 23, 24

*In re Facebook, Inc. S'holder Deriv. Priv. Litig.*,
  367 F. Supp. 3d 1108 (N.D. Cal. 2019) .................................... 5, 10, 17

*In re Finisar Corp. Deriv. Litig.*,
  542 F. Supp. 2d 980 (N.D. Cal. 2008) ................................................. 19

*Forestal v. Caldwell*,
  2016 WL 9774914 (C.D. Cal. Nov. 14, 2016) ....................................... 8

*Forestal v. Caldwell*,
  739 F. App'x 895 (9th Cir. 2018) ......................................................... 9

*Frank v. Elgamal*,
  2014 WL 957550 (Del. Ch. Mar. 10, 2014) ....................................... 19

*In re Gen. Motors Co. Deriv. Litig.*,
  2015 WL 3958724 (Del. Ch. June 26, 2015) ................................. 13, 15

*Graham v. Hutcheson*,
  2009 WL 10664871 (S.D. Cal. Sept. 29, 2009) ................................... 23

*Guttman v. Huang*,
　823 A.2d 492 (Del. Ch. 2003) ........................................................................ 17

*In re infoUSA S'holders Litig.*,
　953 A.2d 963 (Del. Ch. 2007) ........................................................................ 10

*In re Intuitive Surgical S'holder Derivative Litig.*,
　146 F. Supp. 3d 1106 (N.D. Cal. 2015)........................................................... 11

*Kelley v. Rambus, Inc.*,
　2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) .................................................. 24

*MCG Capital Corp. v. Maginn*,
　2010 WL 1782271 (Del. Ch. May 5, 2010) ........................................... 4, 19, 21

*In re McKesson HBOC, Inc. Secs. Litig.*,
　126 F. Supp. 2d 1248 (N.D. Cal. 2000).................................................... 20, 23

*McPadden v. Sidhu*,
　964 A.2d 1262 (Del. Ch. 2008) ...................................................................... 14

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
　2016 WL 4076369 (Del. Ch. Aug. 1, 2016)..................................................... 15

*Merckel v. Sacks*,
　2010 WL 11586832 (C.D. Cal. July 12, 2010) ............................................ 4, 18

*Paskowitz v. Pac. Capital Bancorp*,
　2009 WL 4911850 (C.D. Cal. Nov. 6, 2009) ............................................. 22, 23

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
　2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .................................................... 24

*In re Polycom, Inc.*,
　78 F. Supp. 3d 1006 (N.D. Cal. 2015).............................................................. 12

*Rales v. Blasband*,
　634 A.2d 927 (Del. 1993).......................................................................... 3, 4, 11

*Rattner v. Bidzos*,
　2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ................................................ 18

*Ret. Sys. v. Jobs*,
　593 F.3d 1018 (9th Cir. 2010) ....................................................................... 20

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.*
*Hewlett-Packard Co.,*
845 F.3d 1268 (9th Cir. 2017) ............................................................. 22

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2001) ............................................................... 22

*Rosenbloom v. Pyott,*
765 F.3d 1137 (9th Cir. 2014) ............................................................. 10

*Shabbouei v. Potdevin,*
2020 WL 1609177 (Del. Ch. Apr. 2, 2020) ......................................... 16

*In re Silicon Graphics Inc. Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999) ................................................................. 9

*South v. Baker,*
62 A.3d 1 (Del. Ch. 2012) .............................................................. 16, 18

*Stockman-Sann v. McKnight,*
2013 WL 8284817 (C.D. Cal. Mar. 25, 2013) ................................... 3, 9

*Stone v. Ritter,*
911 A.2d 362 (Del. 2006) .............................................................. 11, 12

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera,*
119 A.3d 44 (Del. Ch. 2015) ................................................................. 9

*Towers v. Iger,*
912 F.3d 523 (9th Cir. 2018) ............................................. 10, 13, 15, 20

*Va. Bankshares, Inc. v. Sandberg,*
501 U.S. 1083 (1991) ......................................................................... 25

*In re Verisign, Inc. Deriv. Litig.,*
531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................. 21, 23, 24

*White v. Panic,*
783 A.2d 543 (Del. 2001) .............................................................. 3, 14

*Wood v. Baum,*
953 A.2d 136 (Del. 2008) ...................................................... 4, 10, 17, 18

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
  153 F. Supp. 3d 1107 (N.D. Cal. 2015).............................................................. 18

*In re Zoran Corp. Derivative Litig.*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007).......................................................... 19, 20

**Statutes**

15 U.S.C. § 78u–4(b)(1) ............................................................................... 20

Del. Code Ann., tit. 8, § 102(b)(7) ......................................................... 4, 10

**Other Authorities**

Federal Rule of Civil Procedure Rule 9(b)................................................ 21

Federal Rule of Civil Procedure Rule 12(b)(6) ......................................... 3

Federal Rule of Civil Procedure 23.1 ............................................. 1, 3, 18, 20

NASDAQ Rule 5605 .................................................................................... 8

MONSTER BEVERAGE CORPORATION'S MOTION TO DISMISS SHAREHOLDER DERIVATIVE COMPLAINT

# I.    INTRODUCTION

Diversity and inclusion are core values of Nominal Defendant Monster Beverage Corporation ("Monster"), and Monster's directors and officers strive to create an inclusive culture in which differences are recognized and valued. Monster embraces a diverse workforce across the organization, including at the senior management level, is committed to equality of opportunity, and does not tolerate harassment or discrimination.

Plaintiff Frank Falat, a single shareholder of Monster, which has more than 500 million shares outstanding, seeks to step into the shoes of Monster and sue every member of Monster's board of directors and three other senior officers (the "Individual Defendants") for breaching their fiduciary duties and federal securities law because, Plaintiff asserts, Monster fails to live up to its public commitment to diversity and instead is a "company run by white males who discriminate and demean women and minorities" that has "failed to create any diversity at the very top of the Company—the Board of Directors."  (Compl. ¶¶ 18, 1.)  Yet, three of the Individual Defendants named in this action are women—two directors and a senior executive who serves as Monster's President of the Americas.  And a Black woman served on the Monster board until she retired in June 2019. Whatever the motivations of Plaintiff here, the Complaint lacks any merit and should be dismissed without leave to amend.

It is a fundamental principle of corporate law that a corporation's board of directors–not a single shareholder–controls the company's affairs.  This includes any decision to pursue litigation on behalf of the company and *all* its shareholders.  The shareholder derivative lawsuit, in which one shareholder is allowed to file suit on the company's behalf, is a narrow exception to this rule.  Under Federal Rule of Civil Procedure 23.1, a shareholder may pursue a derivative action only after alleging particularized facts showing either that (1) the board wrongfully refused a pre-suit demand to sue or (2) a majority of the board

1    members are so riddled with conflicts of interest or lacking in independence that

2    making such a demand would be "futile."  Because Plaintiff failed to make a

3    demand on Monster's board to bring this litigation, he must, as a threshold matter,

4    allege with particularity why he did not do so.  Delaware law presumes that

5    directors are independent and faithful to their fiduciary duties and, to excuse

6    demand, requires a plaintiff to plead particular facts showing that a director's

7    actions were so egregious that he or she faces a "substantial likelihood of personal

8    liability" on each claim the shareholder seeks to pursue.  Plaintiff's Complaint

9    comes nowhere close to overcoming this heavy burden to establish that a majority

10   of Monster's board could not, in good faith, exercise its business judgment in

11   considering a demand.  All of Plaintiff's arguments for demand futility are

12   meritless.

13           The gravamen of Plaintiff's Complaint is that the Individual Defendants

14   breached their fiduciary duties by failing to prevent illegal discrimination against

15   women and minorities.  A claim that a director breached his or her fiduciary duties

16   by failing properly to oversee operations and prevent loss—known as a *Caremark*

17   claim based on *In re Caremark Int'l Inc. Derivative Litigation*, 698 A.2d 959 (Del.

18   Ch. 1996)—is "'possibly the most difficult theory in corporation law upon which a

19   plaintiff might hope to win a judgment.'"  *In re Bidz.com, Inc. Deriv. Litig.*, 773 F.

20   Supp. 2d 844, 856 (C.D. Cal. 2011) (citation omitted).  Plaintiff cannot come close

21   to satisfying *Caremark* here.  Although Plaintiff asserts that Monster should have

22   even greater diversity, a disagreement about the level of diversity at Monster or on

23   Monster's board does not show any violation of anti-discrimination laws.  And

24   even if Plaintiff could show any isolated instances of a violation of law by anyone

25   at Monster, Plaintiff fails to allege particularized facts showing that, on a director–

26   by–director basis, that directors consciously failed to monitor or oversee Monster's

27   operations and turned a blind eye toward the illegal conduct.

28

1    Because Plaintiff cannot establish that demand would have been futile,

2    Plaintiff's Complaint should be dismissed.  And because the defects in Plaintiff's

3    Complaint cannot be rectified, the dismissal should be with prejudice.

4    **II.    LEGAL STANDARD FOR ALLEGING DEMAND FUTILITY**

5    Rule 23.1 requires, for each claim, that Plaintiff state, with particularity:

6    "(A) any effort by the plaintiff to obtain the desired action from the directors or

7    comparable authority and, if necessary, from the shareholders or members; and

8    (B) the reasons for not obtaining the action or not making the effort." *See*

9    *Stockman-Sann v. McKnight*, 2013 WL 8284817, at *10 (C.D. Cal. Mar. 25, 2013)

10   (explaining that "demand futility analyses are conducted on a claim-by-claim

11   basis").  The "heavy burden" under Rule 23.1 is "more onerous than that required

12   to withstand a Rule 12(b)(6) motion to dismiss." *In re Comput. Scis. Corp. Deriv.*

13   *Litig.*, 2007 WL 1321715, at *4 (C.D. Cal. Mar. 26, 2007) (quoting *Levine v. Smith*,

14   591 A.2d 194, 207 (Del. 1991)).

15   Where a plaintiff asserts demand would have been futile, "[a] court looks to

16   the law of the state of incorporation to determine when demand would be futile."

17   *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014).  It is "a cardinal precept" of

18   Delaware law, where Monster is incorporated, that boards of directors, not

19   shareholders, manage a corporation's affairs, including whether and when to bring

20   litigation.  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other*

21   *grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  "In most situations, the

22   board of directors has sole authority to initiate or to refrain from initiating legal

23   actions asserting rights held by the corporation." *White v. Panic*, 783 A.2d 543,

24   550 (Del. 2001).

25   In *Rales v. Blasband*, the Delaware Supreme Court held that where, as here, a

26   derivative claim is based on alleged inaction by the board, rather than a challenge to

27   a specific transaction, a plaintiff must plead particularized facts establishing a

28   reasonable doubt that a majority of the "board of directors could have properly

exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d 927, 934 (Del. 1993); *Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004) (en banc). Further, under Delaware law, it is presumed that directors are "faithful to their fiduciary duties," *Beam*, 845 A.2d at 1048, and will consider a shareholder demand on "an informed basis, in good faith." *Aronson*, 473 A.2d at 812.

It is settled law that directors do not have a disabling conflict of interest simply "because the directors otherwise would have to sue themselves." *Aronson*, 473 A.2d. at 818. "Demand is not excused simply by naming the directors as defendants in the suit or alleging that they participated in the challenged transaction." *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *18 (Del. Ch. May 5, 2010); *see also Merckel v. Sacks*, 2010 WL 11586832, at *5 (C.D. Cal. July 12, 2010) ("[P]laintiffs are not permitted to 'bootstrap' demand futility by simply naming a majority of directors as defendants."). Instead, a director is deemed to lack disinterestedness in a demand only in those "rare cases" where their actions were "so egregious [that] . . . a substantial likelihood of director liability . . . exists." *Aronson*, 473 A.2d at 815. Plaintiff must show by pleading particularized allegations that it is substantially likely that directors will be found personally liable on the proposed claims. *See Burbrink v. Campbell*, 734 F. App'x 416 (9th Cir. 2018). A "mere threat of personal liability alone is insufficient." *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008).

Furthermore, where, as here (Ex. 1[1]), directors are exculpated by their corporation's certificate of incorporation for alleged breaches of their duty of care, consistent with Del. Code Ann., tit. 8, § 102(b)(7), "a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the

---

[1] All citations to exhibits herein are to the exhibits to the Joint Request for Judicial Notice/Incorporation by Reference, submitted concurrently herewith.

directors." *In re Facebook, Inc. S'holder Deriv. Priv. Litig.*, 367 F. Supp. 3d 1108, 1124 (N.D. Cal. 2019) (quoting *Wood*, 953 A.2d at 141).  Plaintiff thus must show "fraudulent," "illegal," or "bad faith conduct," and "plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper." *Id.*  Because the Monster board was comprised of ten members when this action was commenced (Compl. ¶ 255), Plaintiff must make that showing as to at least five directors. *Beam*, 845 A.2d at 1046 & n.8.  Plaintiff fails to do so.

## III.   BACKGROUND

### A.   Parties

Plaintiff alleges he is a current Monster shareholder owning an unspecified number of shares at unspecified times.  (Compl. ¶ 42.)

Monster is a holding company that, through its Monster Energy Drinks and Strategic Drinks segments, engages in the development, marketing, sale, and distribution of energy drink beverages and concentrates.  (*Id.* ¶ 43.)  Monster, a Delaware corporation, is based in Corona, California.  (*Id.* ¶¶ 43, 87.)  In 2019, Monster recorded over $4 billion in sales revenue and $1.1 billion in net income (Ex. 6 at 37), and it placed in the 89th percentile—well above the median for its peers—for three-year revenue.  (Ex. 4 at 25.)  As alleged in the Complaint, Monster's stock traded at $84.54 per share as of August 28, 2020 (Compl. ¶ 188), a nearly $30 per share increase over the prior year. Monster's stock price has increased 39% in just the last year. (Ex. 5.)

Plaintiff has named as defendants ten Monster directors, seven of whom are outside (non-management) directors and two of whom are women.  (Compl. ¶¶ 44-56.)  Plaintiff also names three non-director officers: Emelie Tirre, President of the Americas; Guy Carling, President of Europe, Middle East, and Africa; and Thomas Kelly, Executive Vice President, Finance and/or Controller.  (*Id.*)

**B.      Monster's Statements About Diversity and Inclusion**

In April 2015, Monster's Nominating and Corporate Governance Committee amended the company's charter to state that "diversity of race, ethnicity, gender, sexual orientation and gender identity are factors in evaluating suitable candidates for Board membership." (Ex. 2 at 42.)  The committee's charter continues to contain this language.  (*See* Ex. 4.)

In June 2015, Kathy N. Waller, a Black woman, joined the Monster board. (Ex. 8.)  Ms. Waller was a member of the board until she retired in June 2019.  (Ex. 9.)  In June 2019, two women—Kathleen Ciaramello and Jeanne Jackson—joined Monster's board.  (Compl. ¶¶ 50, 52.)  Women also serve in various significant roles within Monster, including defendant Emelie Tirre, who has been with Monster since 2010 and has served as President of the Americas since July 2018. (*Id*. ¶ 48.)

Monster's website states:

> [W]e strive to create an inclusive culture in which differences are recognized and valued. It is the Company's belief that bringing together diverse backgrounds and giving each employee the opportunity to contribute their skills, experience and perspectives develops strong and sustainable relationships throughout the organization.  Accordingly, we embrace a diverse workforce and value diverse perspectives, leveraging varied thinking, skills experience and work styles.

(*Id*. ¶ 91.)  Further, Monster's Code of Business and Ethics (the "Code of Ethics") states that "[t]he diversity of the Company's employees, officers and directors is a tremendous asset" and provides that the "Company is firmly committed to providing equal opportunity in employment, and does not tolerate discrimination on the basis of race, religion, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, military or veteran status, or any other characteristics protected by federal or state law." (*Id*. ¶¶ 71, 94, 98.)  The Code of Ethics prohibits the "harassment of any individual on

any of the bases listed above," including, for example, "derogatory comments based on race, gender or ethnicity and unwelcome sexual advances." (*Id*. ¶ 98.)

As Plaintiff admits, Monster has in place "policies and controls" regarding "diversity, anti-discrimination, pay equity, hiring and promotion." (*Id.* ¶¶ 64, 111, 218.) Monster has a "zero tolerance" policy with respect to sexual harassment and discrimination. (*Id.* ¶¶ 100, 105, 151, 153, 231-34, 268, 294.) The Complaint also admits that Monster has "human resource policies and procedures" in place and requires "HR classes" on discrimination and harassment. (*Id.* ¶¶ 138, 148, 232.) And when a former employee claimed harassment in 2018, the Monster board hired an independent investigator to look into the allegations. (*Id.* ¶ 148.)

### C.   Plaintiff's Complaint

On September 18, 2020, without making a demand on the Monster board, Plaintiff filed this shareholder derivative action. (*Id.* ¶ 256.) Plaintiff purports to assert claims on Monster's behalf against each of the Individual Defendants under Delaware common law for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, abuse of control, and unjust enrichment, and against each of the ten board members for violation of Section 14(a) of the Exchange Act. (*Id.* ¶¶ 273-298.) Plaintiff alleges that, although Monster stated in the Code of Ethics, on its website, and in its Proxy Statements that the diversity of Monster's employees, officers, and directors is a "tremendous asset," that Monster seeks to "capture diversity in our candidates," and that "diversity of race, ethnicity, gender, sexual orientation and gender identity are factors in evaluating suitable candidates for Board membership," Monster discriminates against women and minorities and has failed to "create any diversity" on the Board of Directors. (*Id.* ¶¶ 1-2, 10, 178-79.)

Plaintiff attempts to excuse his failure to make a demand by asserting that (i) Monster admits in its SEC filings that directors Schlosberg and Sacks, as senior executives of Monster, lack independence (*id.* ¶ 264); (ii) a majority of the board

faces a substantial likelihood of liability because the board supposedly knew its "composition was required to reflect the benefits of diversity," but it failed to "choose any racially or ethnically diverse candidates to be Board members" and also ignored supposed "red flags" that "Monster was discriminating against women, Blacks and other minorities with respect to hiring, promotion, and evaluation of Board candidates" (*id.* ¶¶ 260-61, 271); and (iii) directors Fayard, Pizula, and Selati served on the Audit Committee and, thus, face a substantial likelihood of liability because they were required to assist the board "in fulfilling its oversight responsibilities." (*Id.* ¶¶ 265-67.) Plaintiff's allegations fail to show that *any* member of Monster's board lacks disinterestedness and independence, much less that five members do.

## IV. PLAINTIFF'S COMPLAINT FAILS TO SHOW A MAJORITY OF THE BOARD LACKS DISINTERESTEDNESS OR INDEPENDENCE

### A. Sacks and Schlosberg Do Not Lack Disinterestedness or Independence Merely Because They Are Management

Plaintiff alleges "the Board has conceded in the Company's SEC filings, including its April 21, 2020 proxy statement, that Sacks and Schlosberg are not independent directors of the Company." (Compl. ¶ 264.) Plaintiff confuses the concept of an "independent director" within the meaning of NASDAQ rules with the concept of "independence" in the demand futility context. *See Forestal v. Caldwell*, 2016 WL 9774914, at *11 (C.D. Cal. Nov. 14, 2016) ("[I]ndependence as defined for purposes of demand futility is different from independence under the NASDAQ rules."). While NASDAQ Rule 5605 defines an "independent director" as "a person other than an Executive Officer or employee of the Company or any other individual having a relationship which . . . would interfere with the exercise of independent judgment in carrying out the responsibilities of a director," independence in the demand futility context focuses on whether one director is dominated and controlled by another director who lacks disinterestedness. *See Forestal*, 2016 WL 9774914, at *10 (showing lack of independence requires

"undue influence or control of another board member"). Thus, "a board's determination of director independence under the [exchange] Rules is qualitatively different from, and thus does not operate as a surrogate for, this Court's analysis of independence under Delaware law for demand futility purposes." *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015). Obviously, Monster's SEC filings do not admit that Sacks and Schlosberg lack the independence or disinterestedness to evaluate in good faith a demand to consider the claims raised in this action.

The mere fact that Sacks and Schlosberg are Monster's senior executives is insufficient to establish they lack disinterest or independence. *See Forestal v. Caldwell*, 739 F. App'x 895, 898 (9th Cir. 2018) ("Mason's status as a director-executive did not create a reasonable doubt as to her independence or disinterestedness."); *Stockman-Sann*, 2013 WL 8284817, at *9 (noting that if it were sufficient to allege an inside director's interest in preserving his or her position to "show lack of independence, every inside director would be disabled from considering a pre-suit demand.").[2]

## B. Plaintiff Fails to Show that Any Director Faces a Substantial Risk of Personal Liability

As shown above, in order to overcome the presumption of disinterestedness and independence, Plaintiff must allege particularized facts showing that at least five directors face a substantial likelihood of liability on each of Plaintiff's proposed claims for relief: for breach of fiduciary duty, unjust enrichment, and violation of Section 14(a) of the Exchange Act. (Compl. ¶¶ 263-69.) *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (plaintiff must plead "particular facts showing that the directors' actions were so egregious that

---

[2] Hall is also alleged to have been an employee while serving on the board. (Compl. ¶ 49.) Plaintiff does not allege he lacks independence, and any such claim would fail for the reasons above.

they faced a significant threat of liability").

The interestedness of each board member must be assessed using a "detailed, fact-intensive, director-by-director analysis." *In re infoUSA S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007).  *See also Towers v. Iger*, 912 F.3d 523, 529 (9th Cir. 2018) (plaintiff must "plead facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand") (quoting *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007)).  "'[C]onclusory allegations are not considered,'" *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Brehm*, 746 A.2d at 255), and "inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor." *Wood*, 953 A.2d at 140.

The burden to demonstrate a substantial likelihood of liability is even higher here because of the exculpatory provision in Monster's Certificate of Incorporation. Pursuant to Section 102(b)(7) of the Delaware General Corporation Law, Article VII of Monster's Amended and Restated Certificate of Incorporation exculpates directors from personal liability for breaches of fiduciary duty to the fullest extent permitted by law.  (Ex. 1.)  Because "directors are contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if [Plaintiff] pleads a non-exculpated claim against the directors based on particularized facts." *Facebook*, 367 F. Supp. 3d at 1124.  Thus, Plaintiff must show "'fraudulent,'" "'illegal,'" or "'bad faith conduct,'" and "'plead particularized facts that demonstrate the directors acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper.'" *Id.* at 1124 & n.6 (quoting *Wood*, 953 A.2d at 141).  Plaintiff fails to do so here.

### 1.    No director faces a substantial likelihood of liability for a conscious failure to oversee operations

The gravamen of Plaintiff's Complaint is his conclusory assertion that "the

Board knowingly and/or consciously presid[ed] over the Company's discrimination and retaliation against women, Blacks and other minorities at Monster" and "affirmatively adopted, implemented, and/or condoned a business strategy based on Monster's deliberate and widespread violations of law." (Compl. ¶ 258.) Plaintiff further alleges that the Board ignored supposed "red flags" that "Monster was discriminating against women, Blacks and other minorities with respect to hiring, promotion, and evaluation of Board candidates." (Compl. ¶ 271.)

Breach of fiduciary duty claims based on allegations that directors failed to prevent illegal conduct are called *Caremark* claims. *In re Intuitive Surgical S'holder Derivative Litig.*, 146 F. Supp. 3d 1106, 1115 (N.D. Cal. 2015) ("[F]or claims that demand is excused on the ground that a board remained consciously inactive when it knew (or should have known) about illegal conduct, a different test is applied—these are considered *Caremark* claims, pursuant to *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959, 971 (Del. Ch. 1996), tested under *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).") (citation omitted). Courts recognize that *Caremark* claims are "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *Bidz.com*, 773 F. Supp. 2d at 856 (citation omitted). To excuse demand based on a *Caremark* claim, Plaintiff must plead particularized facts showing that "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Plaintiff cannot make either showing.

### a. Plaintiff concedes Monster had internal controls

To show that the directors utterly failed to implement any internal controls, Plaintiff must include allegations "such as . . . that the company lacked an audit committee, [or] that the company had an audit committee that met only sporadically

---

and devoted patently inadequate time to its work." *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *30 n.200 (C.D. Cal. July 31, 2012) (quoting *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003)).  Instead, Plaintiff confirms the opposite.  Plaintiff admits Monster *had* internal controls, including an Audit Committee with specified oversight responsibilities.  (Compl. ¶¶ 65, 212, 265.)  As Plaintiff alleges, the Audit Committee "'assists the Board of Directors in fulfilling its oversight responsibilities'" and "reviews the Company's policies and practices with respect to the financial reporting and control aspects of risk management," as well as "the status of risk oversight activities performed by the Board and its other committees."  (*Id.* ¶¶ 265-66.)  Plaintiff also acknowledges Monster had "policies and controls" regarding "diversity, anti-discrimination, pay equity, hiring and promotion."  (*Id.* ¶¶ 64, 111, 218.)  And Plaintiff alleges the Board "plays an active role in overseeing and managing the Company's risks" and delegates specific oversight functions to different board committees.  (*Id.* ¶¶ 65, 102, 212, 266.)  Plaintiff's allegations thus establish that Monster had internal controls in place.  *See Ash v. McCall*, 2000 WL 1370341, at *15 n.57 (Del. Ch. Sept. 15, 2000) ("[T]he existence of an audit committee . . . is some evidence that a monitoring and compliance system was in place"); *In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1015 (N.D. Cal. 2015) (rejecting allegations of "inadequate" oversight where complaint conceded "existence of [the] Audit Committee, the Committee's duties, and . . . Code of Business Ethics and Conduct").

### b.   Plaintiff does not plead facts showing a deliberate failure to monitor

Nor does Plaintiff allege facts showing that any director, much less at least five directors, faces a substantial risk of personal liability for breach of fiduciary duty by "consciously fail[ing] to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370.  To make such a showing, Plaintiff must plead "with

particularity that there were so-called 'red flags' that put the directors on notice of problems with their systems, but which were consciously disregarded." *In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *16 & n.113 (Del. Ch. June 26, 2015) (citing *Stone*, 911 A.2d at 373). *See also Towers*, 912 F.3d at 532 (noting that plaintiff must allege facts demonstrating "red flag[s] of illegality," that is, that the "Board knew of and did nothing about illegal activity"). Put differently, Plaintiff must show that (a) there was, in fact, illegal activity, (b) individual directors knew of that illegal activity, and (c) these directors consciously decided to do nothing about it. Plaintiff alleges none of these required facts here.

First, Plaintiff does not establish that there was in fact illegal activity at Monster. Plaintiff alleges Monster's "workforce has consistently only had a very small percentage of African American workers, and no African Americans in leadership positions," and that there was "systematic gender discrimination at Monster, as reflected in at least five (5) lawsuits filed against the Company by former female employees detailing disgusting and abusive behavior toward women by male executives." (Compl. ¶ 271.) Neither the allegation that Monster had a "small percentage" of African American workers nor the false allegation that Monster had no African Americas in leadership positions show any violation of law or illegal activity. Plaintiff does not allege any facts showing that Monster violated anti-discrimination laws or engaged in any other form of "illegality" that could constitute a "red flag." Although the Complaint speculates about race-based pay disparities at Monster (Compl. ¶ 235) and that Monster "has been violating" equal-pay laws (Compl. ¶ 230), it does not allege a single fact to substantiate that speculation. Likewise, Plaintiff's vague and conclusory allegation that Monster's workforce has "consistently only had a very small percentage of African American workers" (Compl. ¶ 271) does not show a violation of law and is unsupported by any pleaded facts in all events.

Likewise, the allegation that five female employees—out of Monster's

thousands of employees (Ex. 6 at 17)—*filed* lawsuits does not show illegal activity. (*See* Compl. ¶¶ 20-31.)  Plaintiff does not allege that any of those matters resulted in an adverse ruling that Monster violated the law at any time, or in any way.

Second, even if Plaintiff could allege that there was some violation of law, by someone at Monster, at some time, Plaintiff fails to allege any facts suggesting that any director faces a substantial likelihood of personal liability for breaching his or her fiduciary duties to Monster by consciously deciding not to do anything about illegal activity.  Plaintiff does not and cannot allege that any director knew of illegal activity *and* then consciously decided not to do anything about it.  To make that showing, Plaintiff must allege that individual Monster directors acted in "bad faith," such that they "knew they were not discharging their fiduciary obligations," which is a "scienter" requirement.  *Id.  See also McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008) (explaining that a director acts in bad faith only where there has been an "intentional dereliction of duty or [a] conscious disregard for one's responsibilities").

Three of the Individual Defendants (Ciaramello, Jackson, and Pizula) did not join the Monster board until June 2019 (Compl. ¶¶ 50, 52-53), *after* the sexual harassment and discrimination accusations became public in 2018.  (*Id.* ¶¶ 135, 148.)  Thus, no claim against these Individual Defendants could possibly succeed.  *See Arduini v. Hart*, 774 F.3d 622, 632 (9th Cir. 2014) (directors who were not on board at time of alleged securities fraud could not even "potentially be held liable for the board's failure to act").

And no facts whatsoever are alleged showing that any of the other seven board members believed and knew there was illegal discrimination at Monster *and* chose to do nothing about it.  Any suggestion that the mere *filing* of five lawsuits against Monster by female employees somehow establishes that directors knew of illegal conduct and made a conscious decision not to address it is frivolous.  Indeed, courts agree that a shareholder cannot state a *Caremark* claim based solely on an

adverse litigation outcome, much less the mere filing of a claim. *White v. Panic*, 783 A.2d 543, 553 & n.31 (Del. 2001) ("The directors were aware of the suits against ICN and the resulting settlements, but this fact does not indicate that the directors knew that the suits were meritorious or that [the CEO] had engaged in the conduct alleged in those suits."); *In re Am. Apparel, Inc. S'holder Deriv. Litig*., 2012 WL 9506072, at *29 ("Although the complaint contains multiple allegations regarding American Apparel's work environment, the bare allegation that Charney's sexual proclivities were widely known is insufficient to support a lack of oversight claim."); *Towers,* 912 F.3d at 530 ("'Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.'") (quoting *Desimone*, 924 A.2d at 940); *In re Gen. Motors Co. Deriv. Litig*., 2015 WL 3958724, at *11 (dismissing *Caremark* claim that "conflate[d] concededly *bad outcomes* from the point of view of the Company with *bad faith* on the part of the Board"). Here, Plaintiff does not and cannot allege facts showing that any of those five proceedings resulted in an adverse judgment against Monster. All that is alleged is that a plaintiff made an accusation, which is patently insufficient.

Nor is the existence of lawsuits that Monster must defend against sufficient to show the cognizable harm or "corporate trauma" necessary to sustain a *Caremark* claim. *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016). In *Daisy Sys. Corp. v. Finegold*, 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988), for example, the court rejected plaintiff's effort to plead damages based on "attorneys' fees and costs expended in the defense of [a] class litigation" because "the mere filing of lawsuits cannot provide a factual predicate for alleging damages." Likewise, *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006), the court rejected allegations, similar to those here (*see* Compl. ¶ 249), that the company had suffered damages from "costs incurred to carry out internal investigations of, and defend against, potential legal

liability from [a] pending class action lawsuit," holding that "derivative claims are foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct."[3]

Setting aside the insufficiency of Plaintiff's alleged "red flags," the Complaint's allegations show that Monster's board *did* monitor events at Monster and address possible issues in a responsible manner.  Plaintiff admits that, in 2018, after one former Monster sales representative alleged sexual harassment and retaliation (Compl. ¶ 135), the Monster board "hired a third party to 'investigate' the allegations and required the investigator to report directly to the Board."  (*Id.* ¶¶ 148-50, 259.)  That fact completely undermines any suggestion that any member of Monster's board "consciously failed" to monitor Monster operations.  *See Shabbouei v. Potdevin*, 2020 WL 1609177, at *8 (Del. Ch. Apr. 2, 2020) ("'The [B]oard has *responded*' to the threat it perceived in Potdevin's inappropriate behavior, which is inconsistent with a theory of liability exposure predicated on 'conscious indifference' to 'red flags.'") (emphasis in original); *South v. Baker*, 62 A.3d 1, 8 (Del. Ch. 2012) (existence of Safety Committee was "inconsistent with the complaint's central premise of intentionally indolent directors"); *Horman*, 2017 WL 242571, at *14 (no substantial likelihood of liability where, when "red flags were waved," the "Board responded").  Plaintiff complains the board instructed the investigator to report directly to the board (Compl. ¶ 259), but Plaintiff is quibbling with the board's exercise of its business judgment about how best to conduct the review; Plaintiff does not show that board members were consciously disregarding their oversight responsibilities merely because they elected to have the investigator

---

[3] Plaintiff's conclusory allegations that Monster has suffered reputational harm and loss of goodwill (Compl. ¶ 250) are likewise insufficient.  *See Cray*, 431 F. Supp. 2d at 1134 ("[L]ost goodwill and business reputation damage allegations must be more than speculative and conclusory.").

report directly to the board.

Finally, to the extent Plaintiff claims that each member of Monster's board faces a substantial likelihood of personal liability for breach of fiduciary duty on the theory that Monster issued Proxy Statements allegedly containing a false and misleading statement (Compl. ¶¶ 14, 121, 175-221, 264-67, 275), approval of a disputed statement is not a sufficient ground for *Caremark* liability unless the statement was actually false *and* the director *knew* the statement was false *and* he or she was "involved in" or "prepared" the statement.  *See Facebook*, 367 F. Supp. 3d at 1127-28.  Here, statements in the Proxy Statements that Monster valued diversity were not false, nor does Plaintiff allege any facts showing that any director *knew* the statements were false *and* that the director was involved in preparing the statements.  The mere fact that a board member "execut[ed]" a company's "financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality."  *Wood*, 953 A.2d at 142; *see also Behrmann v. Brandt*, 2020 WL 4432536, at *16 (D. Del. July 31, 2020) (finding no substantial likelihood of liability for a breach of fiduciary duty under *Caremark* and explaining that "approving public filings or signing a Registration Statement is not enough to establish a substantial likelihood of liability, absent specific allegations of the Director Defendants' direct role in preparing such disclosures.").  Also, although those Proxy Statements were filed long ago, no shareholder filed any action at any time alleging that those Proxy Statements violated securities laws.  *See Guttman*, 823 A.2d at 504 (refusing to find a substantial likelihood of liability where directors had not been named as defendants in a federal securities suit).

### 2. Plaintiff fails to show the three Audit Committee members face a substantial risk of liability

Plaintiff alleges that the three Audit Committee members face a substantial likelihood of liability for breach of fiduciary duty because they supposedly failed to

"act in good faith to address . . . pervasive legal violations . . . , including the rampant sexual harassment and discrimination against female employees, the unlawful retaliation against female employees who complained about the harassment, and false statement approved by the Board regarding diversity and inclusion at the Company."  (Compl. ¶ 267.)

Courts refuse to find a substantial likelihood of liability based merely on an allegation that a board member was a member of the audit committee.  In fact, in a prior derivative action brought on behalf of Monster (then known as Hansen Natural), Judge Wu rejected as "far-fetched" allegations "that board members served on an audit committee, and as a consequence, 'should have been aware of the facts' underlying the theories of liability."  *Merckel*, 2010 WL 11586832, at *7; *see also Bhonagiri v. Pandey*, 2020 WL 5893404, at *3 (N.D. Cal. Oct. 5, 2020) (rejecting substantial likelihood of liability theory based on audit committee membership); *Wood*, 953 A.2d at 142 (rejecting the argument that "membership on the Audit Committee is a sufficient basis to infer the requisite scienter"); *South*, 62 A.3d at 17 ("an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1."); *Rattner v. Bidzos*, 2003 WL 22284323, at *13 (Del. Ch. Sept. 30, 2003) ("The most I can safely admit knowledge of is that [defendants] were members of the Audit Committee during the Relevant Period and, thus, that the Company had an Audit Committee.").

Likewise, courts reject allegations based merely on the fact that directors signed or reviewed challenged disclosures.  *Bhonagiri*, 2020 WL 5893404, at *3. *See also In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) (ruling that conclusory allegations that board "reviewed" statements did not show they were "directly responsible for the misstatements or omissions" as required); *Wood*, 953 A.2d at 142 (holding that "Board's execution" of challenged

statements did not show sufficient involvement); *In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1120 (N.D. Cal. 2015) (allegations that directors "'signed' or were involved in 'reviewing' the disclosures at issue" failed to show demand was excused); *In re Finisar Corp. Deriv. Litig.*, 542 F. Supp. 2d 980, 989-96 (N.D. Cal. 2008) (rejecting allegations of futility based upon membership on Audit Committee and signature on annual reports).

Here, mere allegations that Fayard, Pizula, and Selati served on Monsters' audit committee when certain events took place (Compl. ¶ 265) are insufficient to show that each Audit Committee member faces a substantial likelihood of liability for breach of fiduciary duty for failing to monitor and oversee operations.

### 3.   Plaintiff does not show a substantial likelihood of liability as to his other state law claims

Plaintiff also asserts claims for abuse of control, unjust enrichment, and aiding and abetting breach of fiduciary duty (Compl. ¶¶ 277-90), but he fails to show that any director faces a substantial likelihood of liability for any of these claims.  Plaintiff's abuse of control and unjust enrichment claims simply "repackage" a claim for breach of fiduciary duty.  *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007) (explaining abuse of control claim is a breach of fiduciary duty claim); *Frank v. Elgamal*, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014) ("Court[s] frequently trea[t] duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss.").  Thus, for all the reasons set forth above, Plaintiff cannot show a substantial likelihood of liability for these claims either.  In addition, Delaware law does not recognize an unjust enrichment claim based on receiving compensation while allegedly breaching fiduciary duties; instead, the claimed unjust enrichment must arise out of the challenged conduct.  *See MCG Capital*, 2010 WL 1782271, at *25 (unjust enrichment requires "a relation between the enrichment and impoverishment").  Plaintiff makes no such allegation here.

1    Finally, because Plaintiff cannot show a primary breach of fiduciary duty, he

2    cannot show a substantial likelihood of liability for aiding and abetting that alleged

3    breach either.  *See Zoran*, 511 F. Supp. 2d at 1018 (noting that a "breach of duty by

4    a fiduciary" is an element of an aiding and abetting claim).

5               **4.    Plaintiff does not show any director faces a substantial**
                **likelihood of liability for issuing a false proxy statement**
6

7    Plaintiff also asserts, purportedly on Monster's behalf, a claim under

8    Section 14(a) of the Exchange Act against all of the Monster directors because they

9    allegedly "negligently issued, caused to be issued, and participated in the issuance

10   of materially misleading written statements" in Monster's 2019 and 2020 Proxy

11   Statements.  (Compl. ¶ 293.)  Here again, Plaintiff fails to satisfy the "stringent"

12   pleading standards of Rule 23.1 and its requirement to plead particularized

13   allegations specific to each director, *see Towers*, 912 F.3d at 529, which applies

14   with equal force to Plaintiff's Section 14(a) claims.  *In re CNET Networks, Inc.*,

15   483 F. Supp. 2d 947, 966 (N.D. Cal. 2007).

16   The elements of a claim under Section 14(a) are that "(1) a proxy statement

17   contained a material misrepresentation or omission which (2) caused the plaintiff

18   injury and (3) that the proxy solicitation itself, rather than the particular defect in

19   the solicitation materials, was an essential link in the accomplishment of the

20   transaction."  *N.Y. City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir.

21   2010).  In addition to satisfying Rule 23.1, Plaintiff must meet the heightened

22   pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"),

23   which requires that Plaintiff "specify each statement alleged to have been

24   misleading," as well as "the reason or reasons why the statement is

25   misleading."  *See In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248,

26   1263 (N.D. Cal. 2000); 15 U.S.C. § 78u–4(b)(1).  Where, as here, the Section 14(a)

27   claim is based solely on negligence, the PSLRA also requires Plaintiff to plead with

28   particularity "facts that give rise to a strong inference of negligence."  *McKesson*

*HBOC*, 126 F. Supp. 2d at 1263.  Further, although Plaintiff's Complaint specifically alleges he does not contend that any director intentionally or recklessly violated Section 14(a) (Compl. ¶ 291), the Complaint elsewhere alleges that the board knew the Proxy Statements contained misstatements about Monster's commitment to diversity.  (*Id.* ¶ 175 ("Notwithstanding their knowledge about Monster's failure to promote and achieve diversity and its discriminatory hiring and promotion practices, the Director Defendants caused Monster to issue Proxy Statements that were materially misleading.").)  Therefore, the Complaint sounds in fraud, and Plaintiff must also satisfy Rule 9(b) and plead his case with a "high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).

The Complaint fails to show that any Monster director, much less at least five directors, faces a substantial likelihood of liability under Section 14(a).

> **a.      No director faces any possible conflict of interest because Plaintiff does not seek damages**

Plaintiff concedes he "does not seek any monetary damages for the proxy law violations."  (Compl. ¶ 297.)  <u>That concession is fatal to Plaintiff's demand futility arguments</u>.  Under Delaware law, "a request for equitable relief" "does not subject defendants to the type of personal liability necessary to excuse demand." *MCG Capital*, 2010 WL 1782271, at *21.  It is "the potential for monetary liability, not the possibility of being subject to an injunction, that establishes the problematic interest a board member may feel to excuse a demand." *In re Am. Apparel, Inc. 2014 Deriv. S'holder Litig.*, 2015 WL 12724070, at *15 (C.D. Cal. Apr. 28, 2015) (applying Delaware law). *See also In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) ("[P]laintiffs fail to allege any injury suffered as a result of the allegedly misleading proxy statements—that is, they allege no direct injury suffered *by VeriSign as a corporation* as a direct result of the transaction that was at immediate issue in the proxy (election of directors).")  (emphasis added).

b.     **The challenged statements do not contain material misrepresentations or omissions**

Plaintiff's Complaint fails to show any risk of personal liability against any director for the further reason that Plaintiff does not show that Monster's Proxy Statements were false and misleading.  Plaintiff has not pled particularized facts showing that the statement that Monster considers a candidate's "diversity . . .  so that the Board includes members, where appropriate, with diverse backgrounds" was materially misleading.  At most, this disclosure was an aspirational statement of corporate "commitment" that is inactionable as a matter of law.  *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017); *Am. Apparel*, 855 F. Supp. 2d at 1072-73 (statement regarding commitment to "maintaining best practices" not actionable).  Nor has Plaintiff presented particularized allegations of "contemporaneous statements or conditions" showing that the statement was materially false or misleading "when made."  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

Plaintiff also alleges no facts showing either the intent of any director or his or her purported efforts to "thwart the nomination" of diverse candidates.  And Plaintiff does not explain how the alleged misstatement or omission could have "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]," *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), when the actual racial and gender composition of Monster's board was readily knowable to shareholders.  *See Paskowitz v. Pac. Capital Bancorp*, 2009 WL 4911850, at *6 (C.D. Cal. Nov. 6, 2009) ("Securities laws do not require disclosure of information that is readily available in the public domain.").

c.     **Plaintiff fails to plead that any director acted with a culpable state of mind**

Although Plaintiff asserts that his Section 14(a) claim is "based solely on

negligence" (Compl. ¶ 291), the Complaint alleges that the Individual Defendants made *knowingly* false statements and then attempted to "deliberately conceal[]" the truth from shareholders (*see, e.g.*, *id.* ¶¶ 15, 66, 77, 81-84, 99, 105, 218(c), 221, 233, 262, 294(c)).  Plaintiff's Section 14(a) claim thus sounds in fraud, and Plaintiff must therefore plead particularized facts giving rise to a strong inference that the Individual Defendants acted with scienter—"'even though [Plaintiff] disclaim[s] reliance on a fraud theory.'"  *Graham v. Hutcheson*, 2009 WL 10664871, at *7 (S.D. Cal. Sept. 29, 2009) (quoting *In re JP Morgan Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005)).  *See also Desaigoudar*, 223 F.3d at 1022 n.5 (explaining that it was proper for the district court to have "rejected as 'disingenuous' [plaintiff's] claim that the complaint also sounds in negligence" given the complaint asserted "'knowing[] and intentional[]' misconduct" by defendants) (citation omitted).  Plaintiff pleads no strong inference of intent here as to any director, instead relying only on conclusory assertions of culpability.  (*See*, *e.g.*, Compl. ¶¶ 85, 99, 236.)

Even if the Complaint was based solely on negligence (and it is not), Plaintiff has not pled particularized "facts that give rise to a strong inference of negligence" as to each director.  *McKesson HBOC*, 126 F. Supp. 2d at 1267; *VeriSign*, 531 F. Supp. 2d at 1213 (dismissing Section 14(a) claim due to failure to show "the required state of mind with particularity as to each defendant").  The bare allegation that "Defendants negligently issued, caused to be issued, and participated in the issuance" of the Proxy Statements (Compl. ¶ 293) falls far short of meeting Plaintiff's burden.  *McKesson HBOC*, 126 F. Supp. 2d at 1267 (finding no strong inference of negligence where complaint "pleads no specific facts that would tend to show culpable conduct of any sort"); *Paskowitz*, 2009 WL 4911850, *6 (finding plaintiff failed to plead negligence where he did not allege the purportedly omitted facts were "commonly known" by defendants or that they were "negligently omitted" from proxy).

1
2

### d. Plaintiff fails to show the proxy statements were "an essential link" to the alleged harm

3       Plaintiff has also failed to plead particularized facts showing that the alleged

4   misstatements or omissions were an "essential link in the accomplishment of the

5   proposed transaction." *Desaigoudar*, 223 F.3d at 1022.  The essential link

6   requirement can "only be established when the proxy statement at issue *directly*

7   *authorizes* the loss-generating corporate action."  *Kelley v. Rambus, Inc.*, 2008 WL

8   5170598, at *7 (N.D. Cal. Dec. 9, 2008) (emphasis in original).

9       Here, Plaintiff does not allege that the Proxy Statements at issue authorized a

10  specific transaction that allegedly generated a loss.  *See Verisign*, 531 F. Supp. 2d at

11  1213 ("Damages are recoverable under § 14(a) 'only when the votes for a specific

12  corporate transaction requiring shareholder authorization . . . are obtained by a false

13  proxy statement'. . . .") (citing *Levit v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)).

14      To the extent Plaintiff complains the Proxy Statements were an essential link

15  to the reelection of directors who allegedly caused further losses to Monster (*see*

16  Compl. ¶ 78), courts have repeatedly rejected that theory.  *See*, *e.g.*, *In re Paypal*

17  *Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18,

18  2018) ("A complaint alleging generally that the mere election of directors was an

19  essential link to the directors' subsequent wrongdoing does not satisfy Section

20  14(a)'s requirements.").  And while Plaintiff alleges the purported misstatements

21  and omissions "interfered with Plaintiff's voting rights and choices at the 2018,

22  2019 and 2020 annual meetings," causing stockholders to "reelect the current

23  board" (Compl. ¶¶ 296, 297), Plaintiff does not explain how Monster (on whose

24  behalf he seeks to sue) was harmed.  In all events, Plaintiff does not seek to

25  invalidate the elections, and it is far too late to do so.  *See Copeland v. Lane*, 2013

26  WL 1899741, at *11 (N.D. Cal. May 6, 2013) (refusing to order new election and

27  dismissing Section 14(a) claim where election had occurred months earlier and,

28  thus, the "eggs have already been irretrievably scrambled") (citation and internal

1    quotation marks omitted).

2    　　Nor could Monster's statements concerning diversity (Compl. ¶¶ 10, 103,

3    178-79, 185) be an essential link to a purported harm (*i.e.*, a supposed lack of board

4    diversity).  Although Monster shareholders were presented with

5    management-recommended director nominees in 2019 and 2020 lacking candidates

6    of color, Plaintiff does not allege this was the result of any alleged misstatements in

7    the Proxy Statements.

8    　　Nor are Monster's statements concerning executive compensation (*see*

9    Compl. ¶ 202-03, 209-10) an essential link in any "accomplished transaction"

10   because the shareholder vote concerning compensation was merely "advisory" (*see*

11   *id.* ¶ 198), and Plaintiff "cannot allege an essential link between the alleged

12   omissions and any damages resulting from [an advisory vote]."  *Advanced Advisors*

13   *G. P. v. Berman*, 2014 WL 12772264, at *14 (C.D. Cal. Sept. 16, 2014).  *See also*

14   *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991) (the essential link

15   element requires plaintiffs to allege that the proxy statement solicited "votes legally

16   required to authorize the action proposed").

17   **V.    CONCLUSION**

18   　　For all of the foregoing reasons, Monster's motion should be granted, and

19   Plaintiff's Complaint should be dismissed with prejudice.

20

21   Dated:    January 15, 2021　　　　　MARK R. MCDONALD
                                       DAN MARMALEFSKY
22                                     MARGARET N. BUCKLES
                                       MORRISON & FOERSTER LLP
23
                                       By:   */s/ Mark R. McDonald*
24   　　　　　　　　　　　　　　　　　　　　　　Mark R. McDonald

25                                     Attorneys for Nominal Defendant
                                       Monster Beverage Corporation
26

27

28