**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
  *fbottini@bottinilaw.com*
Yury A. Kolesnikov (SBN 271173)
  *ykolesnikov@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

**RENNE PUBLIC LAW GROUP**
Louise H. Renne (SBN 36508)
  *lrenne@publiclawgroup.com*
Ruth M. Bond (SBN 214582)
  *rbond@publiclawgroup.com*
Ann M. Ravel (SBN 62139)
  *ann.ravel@gmail.com*
350 Sansome Street, Suite 300
San Francisco, California 94101
Telephone:   (415) 848-7200
Facsimile:    (415) 848-7230

*Attorneys for Plaintiff Frank Falat*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| FRANK FALAT, derivatively on behalf of MONSTER BEVERAGE CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> RODNEY CYRIL SACKS, *et al.*, <br><br> Defendants, <br><br> – and – <br><br> MONSTER BEVERAGE CORPORATION, <br><br> Nominal Defendant. | Case No. 8:20-cv-1782-JVS-KES <br><br> **Plaintiff's Memorandum of Points and Authorities in Opposition to Nominal Defendant Monster Beverage Corporation's Motion for Reconsideration and the Individual Defendants' Joinder** <br><br> Date:  May 24, 2021 <br> Time:  1:30 p.m. <br> Judge:  Hon. James V. Selna <br> Courtroom:  10C |

# Table of Contents

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND ..................................................................................3

III.    ARGUMENT......................................................................................4

    A.      Monster Failed to Comply with Local Rule 7-3 ...................................4

    B.      There Is No Valid Ground for Reconsideration...................................7

    C.      The Motion for Reconsideration Fails on the Merits.........................10

    D.      The Requested Books and Records May Be Sufficient to
            Provide a Basis for Pleading Demand Futility....................................12

            1.      Audit Committee Members ......................................................13

            2.      Board's Oversight ..................................................................14

IV.     CONCLUSION .................................................................................15

---

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

# Table of Authorities

**Cases**

*Am. Bank v. City of Menasha*,
    627 F.3d 261 (7th Cir. 2010) .........................................................................10

*Ash v. McCall*,
    2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ....................................11

*Assad v. Josefsson*,
    2018 U.S. Dist. LEXIS 227338 (C.D. Cal. Sept. 14, 2018) .............................6

*Barnett v. Cnty. of Los Angeles*,
    2021 U.S. Dist. LEXIS 40959 (C.D. Cal. Mar. 4, 2021) ............................5, 7

*Beiser v. PMC-Sierra, Inc.*,
    2009 Del. Ch. LEXIS 36 (Del. Ch. Feb. 26, 2009) .......................................11

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ..............................................................................11

*Garcia v. Shasta Bevs., Inc.*,
    2021 U.S. Dist. LEXIS 75388 (C.D. Cal. Feb. 25, 2021) ...............................9

*Glaukos Corp. v. Ivantis, Inc.*,
    2020 U.S. Dist. LEXIS 193048 (C.D. Cal. July 30, 2020) ..............................7

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) .........................................................15

*In re Facebook, Inc.*,
    411 F. Supp. 3d 649 (N.D. Cal. 2019) .............................................................1

*In re Intuitive Surgical S'holder Derivative Litig.*,
    146 F. Supp. 3d 1106 (N.D. Cal. 2015). ..................................................13, 14

*In re SCANA Corp. Deriv. Litig.*,
    2018 U.S. Dist. LEXIS 107042 (D.S.C. June 27, 2018) ................................14

*In re Zillow Grp., Inc.*,
    2020 U.S. Dist. LEXIS 34802 (W.D. Wash. Feb. 28, 2020) ...................13, 14

*J & J Sports Prods. v. Auila*,
    2014 U.S. Dist. LEXIS 190470 (C.D. Cal. Feb. 11, 2014) ..............................5

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

*King v. VeriFone Holdings, Inc.*,
　　12 A.3d 1140 (Del. 2011)......................................................................*passim*

*Kona Enters. v. Estate of Bishop*,
　　229 F.3d 877 (9th Cir. 2000)......................................................2, 7, 9, 10

*Lopez v. Wells Fargo Bank, N.A.*,
　　2016 U.S. Dist. LEXIS 144380 (C.D. Cal. Oct. 17, 2016) ..........................4

*Midland Nat'l Life Ins. Co. v. Jones*,
　　2021 U.S. Dist. LEXIS 54564 (C.D. Cal. Feb. 5, 2021) ...............................7

*Moghaddam v. Liberty Life Assur. Co.*,
　　2015 U.S. Dist. LEXIS 124714 (C.D. Cal. Sept. 17, 2015)...........................6

*Mortg. Elec. Registration Sys. v. Robinson*,
　　2014 U.S. Dist. LEXIS 196685 (C.D. Cal. May 9, 2014)....................4, 5, 6

*Ocegueda v. Zuckerberg*,
　　2021 U.S. Dist. LEXIS 73953 (N.D. Cal. Apr. 16, 2021) ............................1

*Oswald v. Humphreys*,
　　2016 U.S. Dist. LEXIS 154998 (N.D. Cal. Nov. 7, 2016)..........................15

*Parity Networks, LLC v. ZyXEL Communs., Inc.*,
　　2021 U.S. Dist. LEXIS 33514 (C.D. Cal. Jan. 26, 2021)..........................4, 6

*Paul v. China MediaExpress Holdings, Inc.*,
　　2012 Del. Ch. LEXIS 3 (Del. Ch. Jan. 5, 2012)..........................................10

*Rales v. Blasband*,
　　634 A.2d 927 (Del. 1993)...........................................................................11

*Rosenbloom v. Pyott*,
　　765 F.3d 1137 (9th Cir. 2014)..............................................................13, 14

*Saito v. McKesson HBOC, Inc.*,
　　806 A.2d 113 (Del. 2002)......................................................................10, 11

*Scattered Corp. v. Chicago Stock Exch.*,
　　701 A.2d 70 (Del. 1997)..............................................................................11

*Shaev v. Baker*,
　　2017 U.S. Dist. LEXIS 68523 (N.D. Cal. May 4, 2017) .............................14

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

*Sparks v. NBC E-Online*,
    2021 U.S. Dist. LEXIS 43061 (C.D. Cal. Mar. 8, 2021) ...............................8

*Steele v. J.P. Morgan Chase Bank, N.A.*,
    2015 U.S. Dist. LEXIS 68660 (C.D. Cal. May 27, 2015)..........................5, 6

*Tawfilis v. Allergan, Inc.*,
    2015 U.S. Dist. LEXIS 175629 (C.D. Cal. Dec. 14, 2015) ........................7, 9

**Rules**

CIV. L.R. 7-3.............................................................................................4, 5, 6

CIV. L.R. 7-4................................................................................................4, 6

CIV. L.R. 7-18.................................................................................................7

# I.   INTRODUCTION

The Court should deny the motion for reconsideration filed by nominal defendant Monster Beverage Corporation ("Monster" or the Company) and joined by the Individual Defendants because the motion violates Civil Local Rules 7-3 and 7-18.  The motion for reconsideration also fails on the merits.

*First*, Monster violated Rule 7-3 by failing to meet and confer at least seven days prior to filing the motion.  As this Court and other courts in the Central District have held, Rule 7-3 is not a mere technicality.  Rather, courts in this District have required strict compliance with Rule 7-3, including its timeliness requirement.  Under Rule 7-4, the Court should deny or strike Monster's motion for failure to comply with Rule 7-3.  Monster also cannot demonstrate good cause for excusing compliance with Rule 7-3.  On the contrary, Monster does not provide a single reason as to why it could not meet and confer before April 15, 2021.  Rather, it appears that the decision to wait was due to Monster's strategic decision to wait and see if different defendants would obtain a favorable decision from Magistrate Judge Beeler in another shareholder derivative action.  *See Ocegueda v. Zuckerberg*, 2021 U.S. Dist. LEXIS 73953 (N.D. Cal. Apr. 16, 2021) ("*Facebook II*").

*Second*, there are no valid grounds for reconsideration.  In granting Plaintiff leave to amend to propound an inspection demand, this Court has already presumably considered and rejected the primary authority relied upon by Monster in support of reconsideration — *In re Facebook, Inc.*, 411 F. Supp. 3d 649 (N.D. Cal. 2019) ("*Facebook I*").  Specifically, Plaintiff's request for a hearing cited both the Delaware Supreme Court's decision in *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140 (Del. 2011), and the decision in *Facebook I*, which declined to follow *King*.  In granting Plaintiff leave to amend under *King*, the Court has presumably considered both decisions and correctly refused to follow *Facebook I* because it is contrary to the Delaware Supreme Court's holding in *King* that a plaintiff has proper purpose to pursue an inspection demand under § 220 where his or her

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

1   derivative complaint is dismissed with leave to amend.  *See* 12 A.3d at 1150.

2       Similarly without merit is Monster's argument that the later-issued,

3   unpublished, one-paragraph decision from Magistrate Judge Beeler in *Facebook II*

4   warrants reconsideration.  As an initial matter, only a change in *controlling* law

5   warrants reconsideration.  *Facebook II* is not "controlling" precedent.  Moreover,

6   *Facebook II* relies exclusively on *Facebook I* in concluding that the plaintiff in that

7   action cannot pursue an inspection demand — a decision that this Court has already

8   considered and correctly rejected in granting leave to amend.  Finally, if accepted,

9   Monster's argument would allow any party to seek reconsideration of a district

10  court's order every time a different district judge or magistrate judge issues a

11  contrary decision.  Such a result would be contrary to well-established law that a

12  motion for reconsideration is "***an extraordinary remedy***, to be used sparingly" and

13  "should not be granted, ***absent highly unusual circumstances***."  *See Kona Enters.*

14  *v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).[1]

15      *Finally*, Monster's motion fails on the merits.  Delaware law is clear that a

16  books-and-records inspection demand under 8 Del. Code § 220 is ***not*** discovery.

17  Accordingly, the stay of "discovery" under the Private Securities Litigation Reform

18  Act of 1995 ("PSLRA") simply does not apply.  Monster's remaining arguments

19  are similarly inapt.  For example, that the inspection demand could take months is

20  not a valid reason to prevent Plaintiff from seeking books and records.  Similarly,

21  until Monster produces the requested books and records and the Court rules on any

22  amended complaint that is filed, it is pure speculation as to whether any of those

23  books and records would be sufficient to adequately plead demand futility.

24      For all these reasons, the Court should either strike or deny Monster's motion

25  for reconsideration and the Individual Defendants' joinder therein.

26

27      [1] Unless otherwise noted, internal citations and quotation marks are omitted,
28  and all emphasis is added.

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

## II.   BACKGROUND

This is a shareholder derivative action on behalf of Monster, alleging that the Individual Defendants breached their fiduciary duties and violated federal proxy disclosure laws by knowingly failing to disclose unlawful and discriminatory practices at Monster that put the Company at material risk.   Among other things, Plaintiff alleges that the Individual Defendants (1) allowed pervasive sexual harassment and retaliation to take place at the Company, and (2) concealed and perpetuated discriminatory hiring and compensation practices at the Company.

Plaintiff commenced this action on September 18, 2020.   Dkt. No. 1. Defendants filed their motions to dismiss on January 15, 2021.   Dkt. Nos. 30, 31.   A hearing on the motions was scheduled for April 5, 2021, but was vacated when the Court issued its tentative ruling on April 2, 2021.

Pursuant to the procedures set forth in the Court's tentative ruling, Plaintiff submitted a request for a hearing on April 6, 2021.   Dkt. No. 44.   On April 8, 2021, the Court issued its ruling on Defendants' motions, granting with leave to amend Monster's motion to dismiss for failure to adequately plead demand futility.   Dkt. No. 45.   Specifically, the order states that the Court has considered Plaintiff's request for a hearing (which cited both *King* and *Facebook I*) and has determined that leave to amend was appropriate "pursuant to *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1150 (Del. 2011), whereby shareholders whose derivative actions are dismissed with leave to amend can seek books and records for purposes of amending the complaint's allegations with regard to demand futility." *Id.* at 10.

On April 19, 2021, at 3:59 p.m., Monster's counsel called and left a message for Plaintiff's counsel to call him back.   Declaration of Yury A. Kolesnikov ("Kolesnikov Decl.") ¶ 4.   The voicemail did ***not*** state that Monster's counsel wanted to meet and confer regarding any forthcoming motion for reconsideration. *Id.*   Monster's counsel followed up on the voicemail with an e-mail at 4:08 p.m., apprising Plaintiff's counsel for the first time that Monster intended to seek

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

reconsideration of this Court's April 8, 2021 order.  *Id.* ¶ 5.  Plaintiff's counsel promptly responded with an e-mail at 5:38 p.m., stating that Plaintiff's counsel was available to meet and confer on April 20, 2021 and April 21, 2021.  *Id.*

Counsel met and conferred on April 20, 2021.  *Id.* ¶ 6.  Two days later, on April 22, 2021, Monster filed its motion for reconsideration.  Dkt. No. 46.

On April 21, 2021, Plaintiff propounded his inspection demand to Monster. Kolesnikov Decl. ¶ 8.  Monster responded on April 28, 2021.  *Id.*

### III.   ARGUMENT

### A.   Monster Failed to Comply with Local Rule 7-3

Local Rule 7-3 provides that "in ***all*** cases" (with certain exceptions not applicable here), "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference ***shall*** take place ***at least seven (7) days*** prior to the filing of the motion."  CIV. L.R. 7-3.  In turn, Local Rule 7-4 provides that "[t]he Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8."  *See* CIV. L.R. 7-4.

As this Court has observed, "***[c]ompliance with Rule 7-3 is not optional***." *Parity Networks, LLC v. ZyXEL Communs., Inc.*, 2021 U.S. Dist. LEXIS 33514, at *3 (C.D. Cal. Jan. 26, 2021) (Selna, J.) (denying motion for reconsideration); *see also Mortg. Elec. Registration Sys. v. Robinson*, 2014 U.S. Dist. LEXIS 196685, at *2 (C.D. Cal. May 9, 2014) ("Local Rule 7-3 is not a mere technicality."); *Lopez v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 144380, at *5 (C.D. Cal. Oct. 17, 2016) ("Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers.  Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers.").  Courts in the Central District require strict compliance with Rule 7-3's requirements.  *See, e.g.*, *Parity*, 2021 U.S. U.S. Dist. LEXIS 33514, at *3 ("Courts in this district have denied motions for failure to comply with Local Rule 7-3 in particular."); *J & J Sports Prods. v. Auila*, 2014 U.S. Dist. LEXIS 190470, at *2

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

(C.D. Cal. Feb. 11, 2014) ("This Court maintains a firm policy of reducing unnecessary motion practice and requires strict compliance with Local Rule 7-3."). This includes strict compliance with Rule 7-3's requirement that any meet-and-confer "*shall*" take place "*at least seven (7) days* prior to the filing of the motion." *See* CIV. L.R. 7-3; *see also Steele v. J.P. Morgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 68660, at *5 (C.D. Cal. May 27, 2015) ("the conference must still take place at least seven days, not three or four, before the filing of the motion").

Here, Monster's motion for reconsideration violates Rule 7-3 because Monster failed to meet and confer "at least seven (7) days prior to the filing of the motion." *See* CIV. L.R. 7-3. Specifically, the motion for reconsideration was filed on April 22, 2021. Dkt. No. 45. This was *only two days* after the parties met and conferred on April 20, 2021. *See* Kolesnikov Decl. ¶¶ 6–7. Courts in the Central District frequently deny or strike motions where the moving party has failed to meet and confer at least seven days prior to filing the motion. *See, e.g., Steele*, 2015 U.S. Dist. LEXIS 68660, at *5 (striking defendant's motion to dismiss and plaintiffs' motion to remand where the motions were filed only three and four days following the meet-and-confer); *Barnett v. Cnty. of Los Angeles*, 2021 U.S. Dist. LEXIS 40959, at **6–7 (C.D. Cal. Mar. 4, 2021) (denying motion to dismiss where the motion was filed only five days following first attempt to meet and confer).

Monster has also failed to demonstrate good cause for excusing compliance with Rule 7-3's timeliness requirement. *See Mortg. Elec.*, 2014 U.S. Dist. LEXIS 196685, at **4–5 ("the Court will not excuse non-compliance unless the moving party shows that it made a good faith effort to engage in a substantive and timely conference with opposing counsel, *or otherwise shows good cause* why the Court should not strictly enforce Rule 7-3"). Notably, the Court's order was filed on April 8, 2021. Monster's counsel does not provide *a single reason* for why he could not meet and confer prior to April 15, 2021. Rather, it is obvious from the motion for reconsideration that Monster made *a strategic decision* to wait and see if

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

defendants will get a favorable ruling from Judge Beeler in *Facebook II* on the plaintiff's administrative motion to extend time to file an amended complaint, which was filed on April 7, 2021, and fully briefed on April 12, 2021.   *See Ocegueda v. Zuckerberg*, Dkt. Nos. 66, 67 (N.D. Cal.).[2]   A strategic decision to wait and see if a favorable order in a different case will be issued is ***not*** "good cause."

There is no merit to Monster's suggestion that the Court should excuse compliance with Rule 7-3's timeliness requirement on a purported basis that "Plaintiff's counsel was clear that Plaintiff would never agree that his Complaint should be dismissed *without* leave to amend."   *See* Dkt. No. 46 at 11.   Courts in this District consistently reject similar arguments based on purported futility of meet-and-confer or lack of prejudice.   *See, e.g.*, *Assad v. Josefsson*, 2018 U.S. Dist. LEXIS 227338, at **3–4 (C.D. Cal. Sept. 14, 2018) (strictly applying Local Rule 7-3 and denying motion for reconsideration, despite plaintiff's argument that "a pre-motion conference would have been futile"); *Moghaddam v. Liberty Life Assur. Co.*, 2015 U.S. Dist. LEXIS 124714, at *6 (C.D. Cal. Sept. 17, 2015) (noting that "adherence to the local rules is not optional" and rejecting defendants' attempt to justify its failure to comply with Local Rule 7-3 on the basis that "such an attempt would have been futile"); *see also Mortg. Elec.*, 2014 U.S. Dist. LEXIS 196685, at **3–4 (observing that Local Rule 7-3 is ***not*** "a trivial procedural hurdle" — "a speed bump" that counsel "can disregard without any real consequence").

For all the foregoing reasons, under Rule 7-4, Monster's failure to comply with Rule 7-3 is sufficient, by itself, to either strike or deny the motion for reconsideration.   *See* Civ. L.R. 7-3 & 7-4; *see also Parity*, 2021 U.S. U.S. Dist. LEXIS 33514, at *3 (denying motion for reconsideration); *Steele*, 2015 U.S. Dist. LEXIS 68660, at *5 (striking motions that were filed in violation of Rule 7-3's

---

[2] Monster's counsel was aware of *Facebook II* proceedings, as is reflected by Monster's repeated citations in its reply brief to Judge Beeler's March 19, 2021 order granting Facebook's motion to dismiss.   *See* Dkt. No. 41 at 3, 4, 11–12, 19.

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

1 timeliness requirement); *Barnett*, 2021 U.S. Dist. LEXIS 40959, at \*\*6–7 (denying
2 a motion that was filed in violation of Rule 7-3's timeliness requirement).

3 **B.  There Is No Valid Ground for Reconsideration**

4 "In federal court, motions for reconsideration are governed by Federal Rules
5 of Civil Procedure 59(e) and 60(b)." *Tawfilis v. Allergan, Inc.*, 2015 U.S. Dist.
6 LEXIS 175629, at \*1 (C.D. Cal. Dec. 14, 2015).  A motion for reconsideration is
7 "***an extraordinary remedy***, to be used sparingly in the interests of finality and
8 conservation of judicial resources." *Kona*, 229 F.3d at 890.  "Indeed, a motion for
9 reconsideration should not be granted, ***absent highly unusual circumstances***,
10 unless the district court is presented with newly discovered evidence, committed
11 clear error, or if there is an intervening change in the controlling law." *Id.*

12 In this District, motions for reconsideration are further governed by Local
13 Rule 7-18, which provides in relevant part:

14 A motion for reconsideration of an Order on any motion or application
15 may be made only on the grounds of (a) a material difference in fact or
16 law from that presented to the Court that, in the exercise of reasonable
17 diligence, could not have been known to the party moving for
18 reconsideration at the time the Order was entered, or (b) the emergence
19 of new material facts or a change of law occurring after the Order was
20 entered, or (c) a manifest showing of a failure to consider material
21 facts presented to the Court before the Order was entered.

22 Civ. L.R. 7-18.  "Courts in this district have interpreted Local Rule 7-18 to be
23 coextensive with Rules 59(e) and 60(b)." *Tawfilis*, 2015 U.S. Dist. LEXIS 175629,
24 at \*3.  Notably, under Rule 7-18, "a motion for reconsideration may not be made on
25 the grounds that a party disagrees with the Court's application of legal precedent."
26 *Glaukos Corp. v. Ivantis, Inc.*, 2020 U.S. Dist. LEXIS 193048, at \*4 (C.D. Cal. July
27 30, 2020) (Selna, J.); *see also Midland Nat'l Life Ins. Co. v. Jones*, 2021 U.S. Dist.
28 LEXIS 54564, at \*4 (C.D. Cal. Feb. 5, 2021) ("Unhappiness with the outcome is

not included within the rule; unless the moving party shows that one of the stated grounds for reconsideration exists, the Court will not grant a reconsideration."); *Sparks v. NBC E-Online*, 2021 U.S. Dist. LEXIS 43061, at *5 (C.D. Cal. Mar. 8, 2021) ("Displeasure with the outcome alone is insufficient; unless the moving party shows that one of the factors exist, the court will not grant reconsideration.").

Relying on subpart (a) of Rule 7-18, Monster's first argues that reconsideration is appropriate because "Monster did not have the opportunity in the exercise of reasonable diligence to provide the Court with dispositive statutory and case authority why Plaintiff is not entitled to leave to amend to pursue a Section 220 request."  *See* Dkt. No. 46 at 1–2.  But the primary "dispositive" authority that Monster relies upon are *Facebook I* and *Facebook II* decisions.  *See* Dkt. No. 46 at 5–6.  Putting aside the fact that neither authority is "dispositive" or controlling, this Court already considered *Facebook I*, which was referenced in Plaintiff's request for a hearing (*see* Dkt. No. 44 at 3), in modifying its tentative ruling to grant leave to amend (*see* Dkt. No. 45 at 10).  As for *Facebook II*, that unpublished one-paragraph order from Magistrate Judge Beeler relies *exclusively* on *Facebook I*.

Simply put, the arguments that Monster seeks to advance in its motion for reconsideration track the arguments that are addressed in *Facebook I*, which the Court presumably has already considered and correctly rejected as contrary to the Delaware Supreme Court's decision in *King v. VeriFone*, 12 A.3d 1140.  Notably, Monster does *not* cite *a single decision* from either the Ninth Circuit or the Delaware Supreme Court that holds that a books-and-records inspection demand is *not* allowed in a shareholder derivative action asserting a claim for violation of § 14(a) of the Securities Exchange Act of 1934.  On the other hand, in *King*, the Delaware Supreme Court explicitly held that such right to inspect the company's books and records *is available* to a shareholder whose derivative action "was dismissed on demand futility-related grounds without prejudice and with leave to amend."  *Id.* at 1150.  Accordingly, because Monster has failed to identify any

"*material difference* in fact or law from that presented to the Court," Monster fails to demonstrate that reconsideration is proper under subpart (a) of Rule 7-18.  *See also Garcia v. Shasta Bevs., Inc.*, 2021 U.S. Dist. LEXIS 75388, at *7 (C.D. Cal. Feb. 25, 2021) (observing that the party moving for reconsideration bears the burden of demonstrating, among other things, that the new facts or evidence are "of such magnitude" that it would likely change the disposition of the motion).

Next, relying on subpart (b) of Rule 7-18, Monster argues that reconsideration is appropriate because this Court "did not have the benefit of the April 16, 201 ruling in [*Facebook II*]."  *See* Dkt. No. 46 at 3.  This argument, however, fails because only a change *in controlling law* is sufficient to warrant reconsideration.  *See Kona*, 229 F.3d at 890 ("a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, *or if there is an intervening change in the controlling law*"); *see also Tawfilis*, 2015 U.S. Dist. LEXIS 175629, at *3 ("Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b).").  It goes without saying that an unpublished, one-paragraph, trial-court decision does *not* amount to "an intervening change in the controlling law" warranting reconsideration.  That is particularly true in this case, where Magistrate Judge Beeler's decision in *Facebook II* relies *exclusively* on *Facebook I*, which was previously brought to this Court's attention (*see* Dkt. No. 44 at 3) and, thus, presumably considered and rejected by the Court.

Simply put, neither Federal Rules of Civil Procedure 59(e) and 60(b) nor Local Rule 7-18 permit a party to relitigate an issue just because another trial court reached a different conclusion on the issue already decided by the Court.  Indeed, if accepted, Monster's argument would allow any party to seek reconsideration of a district court's order every time a different district judge or magistrate judge issues a contrary decision.  Such a result would be contrary to well-established law that a motion for reconsideration is "*an extraordinary remedy*, to be used sparingly" and

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

"should not be granted, *absent highly unusual circumstances*." *See Kona*, 229 F.3d at 890.  For all the foregoing reasons, the Court should deny Monster's motion for reconsideration for failure to comply with Rule 7-18.

## C.   The Motion for Reconsideration Fails on the Merits

In light of Monster's failure to comply with Rules 7-3 and 7-18, the Court should either strike or deny the motion for reconsideration without reaching its merits.  However, to the extent the Court is inclined to reach the merits, the Court should find that the Delaware Supreme Court's holding in *King* applies equally to shareholder derivative actions asserting a § 14(a) claim.  Notably, the plaintiff in *Facebook II* did not have an opportunity to brief this specific issue and, as such, the decision in *Facebook II* was issued without the benefit of this briefing.

Fundamentally, Monster is wrong in arguing that the PSLRA's stay of "discovery" prevents Plaintiff from propounding a demand to inspect the Company's books and records.  On the contrary, Delaware courts have held that an inspection of books and records under 8 Del. Code § 220 is *not* "discovery."  *See, e.g.*, *Paul v. China MediaExpress Holdings, Inc.*, 2012 Del. Ch. LEXIS 3, at *18 (Del. Ch. Jan. 5, 2012) ("*Inspection under § 220 is not discovery*, but rather is a limited form of document production narrowly tailored to the express purposes of the shareholder requesting access to the company's books and records.")); *see also Am. Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010) ("The Delaware General Corporation Law, for example, entitles shareholders to inspect corporate books and records for 'any proper purpose[,]' *and the Delaware Supreme Court has ruled that requests made under this provision are not discovery demands*.") (citing *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 114–15 (Del. 2002)).

Indeed, the Delaware Supreme Court has consistently held that although derivative plaintiffs are prevented from conducting "discovery" for purposes of establishing demand futility under Rule 23.1, they are *not* prevented from utilizing other "tools at hand," including a books-and-records inspection demand under

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

§ 220.   *See, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 262 n.57, 266 (Del. 2000); *Scattered Corp. v. Chicago Stock Exch.*, 701 A.2d 70, 78 (Del. 1997); *Rales v. Blasband*, 634 A.2d 927, 934 n.10 (Del. 1993).   In *King*, the Delaware Supreme Court reaffirmed the validity of this principle in a situation (such as this) where the derivative plaintiff's complaint is dismissed with leave to amend.   *See* 12 A.3d at 1150; *see also Ash v. McCall*, 2000 Del. Ch. LEXIS 144, at *55 n.56 (Del. Ch. Sept. 15, 2000) (granting further leave to amend and advising plaintiffs to pursue an inspection demand under § 220) (the resulting § 220 action for books and records was later addressed by the Delaware Supreme Court in *Saito*, 806 A.2d 113).[3]

As observed earlier, Monster does not cite ***a single binding authority*** from the Ninth Circuit or the Delaware Supreme Court that would exclude derivative actions asserting a § 14(a) claim from the Delaware Supreme Court's holding in *King*.   To the extent several district courts, including *Facebook I*, have held to the contrary, they conflate a § 220 inspection demand with "discovery" under the PSLRA, are contrary to the holding in *King*, and should not be followed.

Monster's remaining arguments similarly lack merit.   For example, Monster argues that "even where a federal securities claim is not included in a shareholder derivative complaint, courts often stay discovery in a shareholder derivative action until the plaintiff can survive a motion to dismiss."   Dkt. No. 46 at 5.   Again, that is irrelevant because § 220 inspection demand is ***not*** "discovery" and because any such holding, to the extent it applies to § 220 inspection demand, would be contrary to the Delaware Supreme Court's decision in *King*.

Similar inapt is Monster's argument that "Delaware courts are generally

---

[3] Monster's reliance on *Beiser v. PMC-Sierra, Inc.*, 2009 Del. Ch. LEXIS 36 (Del. Ch. Feb. 26, 2009), is misplaced.   The Delaware Supreme Court in *King* expressly distinguished *Beiser* on the ground that at the time the derivative plaintiff in that case pursued an inspection demand, "no leave to amend had been granted" in the derivative action.   *See King*, 12 A.3d at 1148–49.   That is not the case here.

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

hostile to shareholder Section 220 demands submitted *after* the shareholder has already filed derivative litigation."  Dkt. No. 46 at 6.  While that may be true, the Delaware Supreme Court in *King* held in no uncertain terms that the failure to seek an inspection of books and records prior to commencement of the derivative suit ***does not*** bar the plaintiff from thereafter pursing a § 220 inspection demand if his or her derivative complaint is dismissed with leave to amend.  12 A.3d at 1150.

Monster's complaint that an inspection demand under § 220 "can take many months to resolve" is also not a reason to deny Plaintiff the right that he has, as a shareholder of Monster, to inspect books and records.  The Delaware Supreme Court is well aware of how long an inspection demand § 220 can take to resolve, and yet it held that a derivative plaintiff can pursue such a demand when his or her derivative complaint is dismissed with leave to amend.  *See King*, 12 A.3d at 1150.  To the extent Monster is suggesting that it will refuse to comply in good faith with a books-and-records demand, thus requiring Plaintiff to litigate to enforce his statutory inspection rights, that is similarly not a reason to deny leave to amend.

In any event, any guess as to how long an inspection demand would take in this case is pure speculation at this juncture.  Notably, Plaintiff has already propounded an inspection demand to Monster on April 21, 2021.  Kolesnikov Decl. ¶ 8.  Monster has already responded to the demand on April 28, 2021.  *Id.*  The parties will now meet and confer regarding Monster's objections.  If the meet-and-confer process is not successful, both California and Delaware law provide for expedited proceedings to enforce shareholder inspection rights.  At this juncture, however, it is impossible to know whether Plaintiff would be required to resort to litigation to enforce his inspection rights and, if so, how long that would take.

**D.    The Requested Books and Records May Be Sufficient to Provide a Basis for Pleading Demand Futility**

There is no merit to Monster's suggestion that the § 220 inspection would not provide a basis to demonstrate demand futility.  To demonstrate demand futility,

Plaintiff need only allege that a demand on 5 out of 10 directors on Monster's board would be excused because they are either interested or lack independence.  *See, e.g.*, *Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014).  The Court already agreed with Plaintiff that "Sacks, Schlosberg, and Hall are sufficiently interested as both long-term directors and managers to excuse demand."  Dkt. No. 46 at 8.  As such, Plaintiff need only demonstrate that **2 out of the 7** remaining directors are either interested or lack independence to excuse the demand.

### 1.   Audit Committee Members

Among other things, Plaintiff's inspection demand seeks books and records pertaining to the Audit Committee's knowledge of the pervasive sexual harassment, discrimination, and retaliation at Monster.  As numerous courts have observed, while committee membership by itself may not be sufficient to impart knowledge, allegations that directors served on the audit committee *and had access to the allegedly omitted material information* can be sufficient to excuse the demand.

For example, in *In re Intuitive Surgical S'holder Derivative Litig.*, the court found demand excused as to audit committee members where plaintiff "has pleaded sufficient particularized facts to show that beyond the directors' membership in the Audit Committee, they knew of the defect and regulatory deficiencies" and, thus, "should have known about the covert recalls and should have known to comply with the regulatory requirement of reporting the recalls because the committee oversees regulatory compliance." 146 F. Supp. 3d 1106, 1121 (N.D. Cal. 2015).

Similarly, in *In re Zillow Grp., Inc.*, the court found demand excused as to two audit committee members where plaintiffs alleged that those directors "served as audit committee members when Zillow received the 2015 civil investigative demand from the CFPB."  2020 U.S. Dist. LEXIS 34802, at *10 (W.D. Wash. Feb. 28, 2020).  Given that the audit committee was "charged with reviewing legal and regulatory matters that may affect the company," the court found that it was "reasonable to infer that [the two audit committee members] were informed of the

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

contents of the civil investigative demand," thus putting them "on notice that the company's comarketing program potentially violated federal law." *Id.* at **10–11.

Here, just like in *Intuitive Surgical* and *Zillow*, Monster's Audit Committee was charged with "review[ing] and discuss[ing] with management *the risks faced by the Company*," including "*legal matters*, as well as the steps management has taken to monitor and control such exposures." Compl. ¶ 212. Defendants Selati and Fayard have served on the Audit Committee since 2004 and 2015, respectively. *Id.* ¶¶ 51, 55. The alleged sexual harassment and retaliation took place between 2016 and 2018 and the five lawsuits were filed in 2018. *Id.* ¶¶ 124–157. Plaintiff is seeking books and records to determine what information was disclosed to the Audit Committee between 2016 and 2018 regarding the alleged sexual harassment, discrimination, and retaliation and what steps were taken by the Audit Committee in response, if any. This information, which is currently in Monster's exclusive possession, may be sufficient to allege substantial likelihood of liability on behalf of Fayard and Selati, thus excusing the demand. *See Intuitive Surgical*, 146 F. Supp. 3d at 1121; *Zillow*, 2020 U.S. Dist. LEXIS 34802, at *10; *see also In re SCANA Corp. Derivative Litig.*, 2018 U.S. Dist. LEXIS 107042, at **15–16 (D.S.C. June 27, 2018) (excusing the demand based on, *inter alia*, plaintiff's allegations regarding knowledge obtained through committee memberships).

## 2.    Board's Oversight

Plaintiff can also allege demand futility by demonstrating that the Board as a whole was aware of the pervasive sexual harassment, discrimination, and retaliation at the Company but failed to act in the face of such knowledge. *See, e.g.*, *Rosenbloom*, 765 F.3d at 1150–54 (plaintiff sufficiently alleged that the board was aware of the company's off-label promotion of its key drug); *Shaev v. Baker*, 2017 U.S. Dist. LEXIS 68523, at **32–46 (N.D. Cal. May 4, 2017) (plaintiff sufficiently alleged that the board was aware of the widespread illegal activity at the company and of the several lawsuits); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F.

Supp. 2d 1044, 1060–64 (C.D. Cal. 2008) (plaintiff sufficiently alleged directors' awareness of the widespread deviations from loan underwriting standards that were occurring in the company's branch offices around the country).

Here, the information regarding the Board's awareness of the sexual harassment, discrimination, and retaliation is in Monster's exclusive possession. Plaintiff is seeking Board and committee minutes and materials, which would demonstrate if and to what extent such issues were discussed at the Board or committee meetings and what actions, if any, were taken in response. *See, e.g.*, *Oswald v. Humphreys*, 2016 U.S. Dist. LEXIS 154998, at **!0–12 (N.D. Cal. Nov. 7, 2016) ("a plaintiff can obtain books and records that address the crux of the shareholder's purpose ... if that information is unavailable from another source" (citation omitted)) (allowing plaintiff to inspect books and records to determine the extent of director knowledge of the alleged improper conduct). Such information may be sufficient to demonstrate substantial likelihood of liability on behalf of the Board, thus excusing the demand.

\*   \*   \*

Again, until Monster produces the books and records requested in Plaintiff's inspection demand, it is pure speculation to debate whether those books and records would provide sufficient facts for Plaintiff to amend his demand-futility allegations. If Monster is confident that the requested books and records would not be sufficient, it should produce them promptly, so that the Court can expeditiously rule on the sufficiency of the allegations in any amended complaint that is filed. What Monster cannot do, however, is to prevent Plaintiff from reviewing the requested books and records merely based on its "say-so" that the books and records that are in its exclusive possession and control do not bear on the issues of demand futility.

## IV.   CONCLUSION

For all of these reasons, the Court should either strike or deny Monster's motion for reconsideration and the Individual Defendants' joinder therein.

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder

1    / / /

2    Dated:  May 3, 2021                              Respectfully submitted,

3                                                     **BOTTINI & BOTTINI, INC.**

4                                                     Francis A. Bottini, Jr. (SBN 175783)
                                                          *fbottini@bottinilaw.com*
5                                                     Albert Y. Chang (SBN 296065)
                                                          *achang@bottinilaw.com*
6                                                     Anne Beste (SBN 326881)
                                                          *abeste@bottinilaw.com*
7                                                     Yury A. Kolesnikov (SBN 271173)
                                                          *ykolesnikov@bottinilaw.com*
8

9

10                                                    _____*/s Yury A. Kolesnikov*_____
                                                          Yury A. Kolesnikov
11

12                                                    7817 Ivanhoe Avenue, Suite 102
                                                     La Jolla, California 92037
13                                                    Telephone:   (858) 914-2001
                                                     Facsimile:    (858) 914-2002
14

15                                                    **RENNE PUBLIC LAW GROUP**
                                                     Louise H. Renne (SBN 36508)
16                                                        *lrenne@publiclawgroup.com*
                                                     Ruth M. Bond (SBN 214582)
17                                                        *rbond@publiclawgroup.com*
                                                     Ann M. Ravel (SBN 62139)
18                                                        *ann.ravel@gmail.com*
19                                                    350 Sansome Street, Suite 300
                                                     San Francisco, California 94101
20                                                    Telephone:   (415) 848-7200
                                                     Facsimile:    (415) 848-7230
21

22                                                    *Attorneys for Plaintiff Frank Falat*

23

24

25

26

27

28

---

16

Plaintiff's Brief in Opposition to Motion for Reconsideration and Joinder